**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

IN RE:

**GERALD L. PENICK II**
**LINDA S. PENICK**

**DEBTOR(S)**

CASE NO. 17-20178

CHAPTER 12
Judge Tracey N. Wise

**CHAPTER 12 PLAN OF REORGANIZATION**

COME NOW, the Debtors, Gerald L. Penick II and Linda S. Penick, by and through counsel, and propose the following Plan of Reorganization, pursuant to 11 U.S.C. § 1221:

**ARTICLE I**
**GENERAL OVERVIEW OF THE PLAN**

The Plan provides that the Debtors shall submit all of their Net Disposable Income, as defined herein, from their unencumbered farming operations; any other farm income derived; any government farm payments, if any; and any other income derived by the Debtors, including Social Security, or other benefits paid to them.  Such funds shall be submitted to the control of the Chapter 12 Trustee for a period of five (5) years, beginning on the date of filing.  Net Disposable Income shall mean income from all of the sources above, after payment of all farming and living expenses and payments to the Debtors' secured creditors as set forth herein.  A summary of the Debtors' encumbered assets, the value thereof, and the secured liabilities, is described herein.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims consist of Allowed Administrative Claims, which shall be paid from the Debtors' operations and/or Net Disposable Income, as set forth herein.

All fees payable to the Chapter 12 Trustee shall be paid from the Debtors' Net Disposable Income as defined in Article I.

An Allowed Administrative Claim, as defined in 11 U.S.C. § 503(b), if any, shall be paid in full, without interest, either in cash at confirmation, unless otherwise agreed upon by the parties, or when due in the ordinary course.

Professional Fees, including the fees to Debtors' Counsel, namely, Michael L. Baker and the firm of Ziegler & Schneider, P.S.C., shall be paid by the Debtors, or by the Trustee, as soon as practical, after notice and hearing, and upon approval of this Court. Allowed Professional Fees shall be satisfied by payment by the Chapter 12 Trustee from the Net Disposable Income. Post confirmation Professional Fees shall not require Court approval but shall be disclosed in accordance with 11 U.S.C. § 329.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

11 U.S.C. § 1222 requires that a plan of reorganization classify the claims of Debtors' creditors. Said provision also requires that a plan of reorganization provide for the same treatment of each class of claims, unless a claimant agrees to another treatment. The classifications of the Debtors' claims are as follows:

1. Unclassified claims as described in the proceeding paragraph, including Professional Fees and Chapter 12 Trustee's fees.

2.  Secured Lien of Forcht Bank.  Forcht Bank holds the first mortgage on the Debtors' real estate located at 330 Clarks Creek Rd, Dry Ridge, Kentucky 41035, located in Grant County, Kentucky.  Forcht Bank has filed two proofs of claim in the amount of $149,455 and $66,511.  The property consists of three (3) contiguous parcels, which comprise 107 acres, more or less, which are described more particularly in Deed Book 181, page 259, and Deed Book 81, page 262, of the Grant County Clerk's Records.  The Petition lists an appraised value of $250,000, based upon appraisals obtained by Forcht Bank prior to the filing of the bankruptcy.  The Debtors have obtained an appraisal, which values the property at $220,000.  The claim of Forcht Bank shall be treated as secured to the extent of $215,966.00.  Said mortgage shall bear interest at the rate of 5 percent (5%) and be amortized over a period of 40 years.  The Debtors shall make a payment, during the Chapter 12 Plan, to the Chapter 12 Trustee, James D. Lyon, in the amount of $1,041.38, plus the appropriate Trustee fee.  Upon the completion of the Plan, the Debtors shall make said payment directly to Forcht Bank until the loan is paid in full, or the property is otherwise disposed of.  The first payment to Forcht Bank shall commence on the first day of the month following the entry of the order of confirmation, and continuing on the first day of each month thereafter.

3.  Secured Lien of the Internal Revenue Service.  The Internal Revenue Service filed a notice of a federal tax lien in the Grant County Clerk's Records, as recorded in Book LP 31, page 158, on July 10, 2008.  The filing of the lien of the Internal Revenue Service precedes any other subsequent lien, including that of First Farmers Bank.  The Proof of Claim filed by the Internal Revenue Service shows that the Debtors still owe the Internal Revenue Service on said secured claim in the amount of $156,503.  Said lien is all encompassing.  It includes all assets owned by the Debtors at the time of filing.  However, since the mortgage of Forcht Bank precedes the lien

3

of the Internal Revenue Service, and the amount owed to Forcht Bank exceeds the value of the property, the lien of the Internal Revenue Service will not attach to the Debtors' real estate, and upon the discharge entered in this case, said lien shall be released in the Grant County Clerk's Records.  However, the lien of the Internal Revenue Service does attach to all other assets of the Debtors.  The Debtors have obtained values of various property, specifically the farming equipment used by the Debtors, which include a 2002 Horse Trailer, a 2006 Cornpro bobcat trailer, a 2004 Skid Steer, and a 1957 Farm Tractor.  The combined value of the assets of the Debtors that are covered by this lien total $25,000.  These values are derived from appraisals obtained by the Debtors on the farm equipment and estimate values of the remaining assets, including vehicles and personal property of the Debtors.  This includes an estimated value of the interest that the Debtor, Gerald Penick, has in the Estate of his late mother, Lois Penick, who died prior to the filing of the bankruptcy.  The Estate is still being administered.  The Debtor shall receive, if anything, a 10 percent (10%) net distribution from that probate estate.  The lien of the Internal Revenue Service shall be paid at the statutory rate, and the Internal Revenue Service shall be paid in full upon completion of the term of this Plan.  The Debtors anticipate that the monthly payment that will be made to James D. Lyon, Chapter 12 Trustee, will be approximately $500.  The secured lien of the Internal Revenue Service shall be paid in full upon the completion and consummation of the Chapter 12 Plan.

    4.    Secured Claim of First Farmers Bank.  At the time of the filing of the Petition, the Debtors also had granted a lien to First Farmers Bank, a subordinate mortgage on the Debtors' residence located at 330 Clarks Creek Rd, Dry Ridge, Kentucky 41035, and the farm equipment enumerated in the preceding paragraph, namely the 2002 Horse Trailer, a 2006 Cornpro bobcat trailer, and a 2004 Skid Steer..  However, the liens are subordinate to the secured interest of Forcht

Bank on the Debtors' residence, and are further subordinate to the lien of the Internal Revenue Service, as the mortgage and security interest of First Farmers Bank was filed subsequent to the tax lien of the Internal Revenue Service.   The mortgage was recorded in the Grant County Clerk's Records on August 17, 2009, after the recording of the tax lien of the Internal Revenue Service. The claim of First Farmer Bank shall be treated as an unsecured creditor.   Upon the successful completion of the Plan, and the entry of a report by the Chapter 12 Trustee that all plan payments have been made, First Farmers Bank shall file a release of its mortgage and liens within 30 days. The amount owed to First Farmers Bank shall be paid with allowed unsecured claims as defined subsequently herein.

5. Claim of One main Financial.  One Main Financial holds a lien on a 2000 Ford F350 pickup truck with more than 500,000 miles.   The truck was valued by the Debtor at $6,500 on the Petition.   However, pursuant to Kelly Blue Book values the truck at $5,000.   The Debtors propose to pay One Main Financial a monthly payment through the Trustee in the amount of $103.59 for 54 months, plus the appropriate Trustee fee.   The balance of the claim of One Main shall be treated as unsecured and share with the members of paragraph 7.

6. A Class of any pre-petition, priority claims that are entitled to enjoy priority as defined in 11 U.S.C. § 507 shall be paid in full on or before the completion of all plan payments required under the terms of this Plan.   Said claims shall be paid by the Chapter 12 Trustee from the Debtors' Net Disposable Income.   Said claims shall be paid in full before any other unsecured claim, except for administrative claims described in paragraph 1 of this Plan.   The Debtors believe that there are priority claims owing to the Internal Revenue Service, and said claims shall be paid in full through this Chapter 12 Plan.

7. Allowed unsecured claims. This Class consists of all allowed unsecured claims who have timely filed proofs of claims, which shall be paid by the Chapter 12 Trustee, pro rata, from Net Disposable Income, if any, on or before the anniversary of the effective date of the Chapter 12 Plan of Reorganization. Included in this paragraph is the claim of First Farmers Bank and One Main Financial. Excluded from this paragraph is a restitution claim owed to the United States of America by Linda S. Penick, which shall be paid pursuant to the terms of the Order entered by the United States District Court directly and outside of any payment made to the Chapter 12 Trustee.

8. The Debtors' income is derived from several sources, including agricultural operations. The Debtor, Gerald Penick, raises calves for other farmers. He is typically paid anywhere from $50 to $100 per calf for a 10- to 12-week period. The income derived from caring and feeding of the calves varies throughout the year, although many of them are typically tended to in the fall. The Debtor engages in two types of agreements for compensation. One is a flat fee per calf for maintaining and raising the calves on the Debtors' property. This typically would be approximately $50 to $100 per calf. The owner of the calf provides all of the feed and any medical care. The Debtor is also engaged in operations in which he will raise the calves, and the expenses will be divided, and any subsequent proceeds would be divided. In addition to raising calves, the Debtors also harvest and sell fire wood on a regular basis throughout the year. In addition to providing fire wood, the Debtors also harvest timber that can be used for other uses, such as construction, etc. The Debtor, Gerald Penick, receives Social Security, currently in the amount of $1,196 per month, which will decrease to $1,062 starting in June of 2017 and continuing thereafter; he also receives a monthly pension from the Kentucky Retirement System in the amount of $207.45. During the course of the Chapter 12 Plan, the Debtor, Linda Penick, will become

eligible to receive Social Security. When she makes the determination to collect that Social Security has not yet been determined. The Debtors generated in excess of $34,000 in farming proceeds in 2015, and in excess of $36,000 in 2016. In addition, the Debtors earned an additional $4,739 from other income in 2016.

The Debtors are currently raising approximately 10 calves on their farm, and have income derived from wood-cutting operations. The Debtors anticipate that the farming operations will be sufficient to fund the payment of the secured claims, and living expenses. It is undetermined to what extent the Debtors believe they will be able to fund payments for unsecured creditors from Net Disposable Income. That payment will depend upon the number of calves the Debtors are able to raise, and the amount of fire wood and other timber they are able to harvest from both their property and others. However, the Debtors do anticipate sufficient income to retire both the secured tax debt and the priority tax debt in full before the completion of the Plan, and otherwise pay to the Chapter 12 Trustee all funds required under the Plan.

## ARTICLE IV

The Debtors hereby submit their Net Disposable Income, as defined above, to the supervision and control of the Chapter 12 Trustee for a period of five (5) years, or until unsecured claims are paid in full, whichever occurs first. The Debtors' Unencumbered Funds shall be derived from the unencumbered proceeds from the Debtors' current and future farming operations; miscellaneous farm income; and other sources of income derived by the Debtors, such as Social Security and retirement income or other benefit.

## ARTICLE V
## ASSUMPTION OF EXECUTORY CONTRACTS

To the best of the Debtors' knowledge and belief, no executory contracts or unexpired leases exist to which the Debtors are a party.

## ARTICLE VI
## MODIFICATION OF PLAN AFTER CONFIRMATION

The Debtors may request the Court to modify the Plan, either before or after confirmation, in accordance with 11 U.S.C. § 1222 or 11 U.S.C. § 1229.

## ARTICLE VII
## OBJECTIONS TO CLAIMS

Debtors reserve the right to file objections to claims after Confirmation.

## ARTICLE VIII
## PROHIBITION OF OFFSETS

No creditor, including secured creditors, may offset any funds due the Debtors, without prior motion and order allowing said offset from the Court during the operation of the Plan.

## ARTICLE IX
## AUTOMATIC STAY

Notwithstanding the entry of an order confirming the Plan, the automatic stay provided by 11 U.S.C. § 362 shall continue in effect as to all property retained by the Debtors until the Plan has been completed, terminated or a discharge entered, or an order entered by the Court lifting the automatic stay, whichever is earlier.  The automatic stay does not apply to any property given as collateral for post-confirmation operating loans, which may be approved by the Court.  There are none at the time of the filing of this Plan.  If the Court enters an order granting relief from the automatic stay to a secured creditor, either Forcht Bank or the United States of America, Internal Revenue Service, thence said creditor shall have six months from the entry of the order to amend its proof of claim to include any deficiency balance resulting from the sale of that collateral.  Said deficiency claim shall be treated as an unsecured claim at the same level as described in paragraph 6, and its lien rights shall be deemed extinguished, and a balance owed on said claim, if any, upon

the completion of the Plan, shall be subject to the discharge entered in this case pursuant to 11 U.S.C. § 1228.

## ARTICLE X

Because of the amounts owed under the secured liens in favor of Forcht Bank and the Internal Revenue Service, there would be no distribution to unsecured creditors in the event that the Debtors had filed a Chapter 7 bankruptcy petition. Therefore, the Debtors have met the liquidation requirement set forth in 11 U.S.C. § 1225(a)(4).

## ARTICLE XI

Except as provided in the Plan, the order confirming the Plan vests all property of the Estate in the Debtors.

The Court shall retain jurisdiction of the Debtors and their property for the term of the Plan.

The secured debt of any secured creditor may be further modified by agreement between the Debtors and said creditor without Court approval, or upon application of the Debtors and approval by the Court, for cause, after notice to the subject secured creditor and after a hearing conducted by the Court.

## ARTICLE XII
## DISCHARGE

Upon the Debtors' compliance with the provisions of the Plan, for the term of the Plan, the Court shall enter a discharge, which shall discharge the Debtors from all claims provided for in the Plan, except for those provided under 11 U.S.C. § 1222(b)(5) and 11 U.S.C. § 523(a).

## ARTICLE XIII

Except as otherwise expressly set forth herein, all creditors whose claims are treated as secured in this Plan shall retain liens on the collateral securing each respective claim until such claim is paid in full, as provided by this Plan. Except as modified by the terms of this Plan, all

documents evidencing indebtedness and security in favor of said creditors remain the same and are incorporated herein by reference, and as if more fully set forth in this Chapter 12 Plan of Reorganization.

Respectfully submitted,

    /s/   Gerald L. Penick II
Gerald L. Penick II


    /s/   Linda S. Penick
Linda S. Penick


    /s/   Michael L. Baker
Michael L. Baker (02708)
ZIEGLER & SCHNEIDER, P.S.C.
541 Buttermilk Pike, Suite 500
P.O. Box 175710
Covington, KY 41017-5710
(859) 426-1300
Facsimile:   (859) 426-0222
mbaker@zslaw.com
*Attorney for*
*Gerald L. Penick II and Linda S. Penick*

### CERTIFICATION OF SERVICE

The undersigned hereby certifies that on this 12th day of May, 2017, a copy of the foregoing was served either by regular U.S. mail, postage prepaid, or through electronic service, where possible, upon the following:

United States Trustee
100 East Vine Street
Suite 500
Lexington, KY   40507

James D. Lyon
209 E High St
Lexington, KY   40507
*Chapter 12 Trustee*

Gerald and Linda Penick
330 Clarks Creek Rd
Dry Ridge, KY   41035-8778

Bradley S. Salyer
MORGAN & POTTINGER, P.S.C.
401 S Fourth St
Ste 1200
Louisville, KY   40202
*Attorney for Forcht Bank, National Association*

and to all parties as listed on the Debtors' List of Creditors and those parties receiving electronic notice via the Court's CM/ECF system.

      /s/   Michael L. Baker
      Michael L. Baker