**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

**IN RE**

**GERALD L. PENICK, II**  CASE NO. 17-20178
**LINDA S. PENICK**

**DEBTORS**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR STAY RELIEF**

In this chapter 12 case, creditor Forcht Bank, N.A. (the "Bank") contends Debtors are ineligible to be in a chapter 12 proceeding and cannot effectively reorganize within the meaning of § 362(d).[1]  The Bank, therefore, has moved for relief from the automatic stay [ECF No. 18] and objects to the confirmation of Debtors' plan [ECF No. 66].  Debtors contend they are eligible for chapter 12 and that their proposed plan with its clarifications and amendments [ECF Nos. 24, 42, 68] is confirmable.  The Court held an evidentiary hearing on July 13, 2017, and these matters are ripe for decision.  Although Debtors are eligible under chapter 12, their plan is not feasible and the Bank is entitled to relief from the automatic stay.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.  The Court has jurisdiction in this matter and venue is proper.  28 U.S.C. §§ 1334, 1409.  This is a core proceeding and the Court is authorized to enter final orders adjudicating these matters.  28 U.S.C. § 157(b)(2)(A), (L), (O).

**1. Debtors are Eligible for Chapter 12.**

Married Debtors Gerald L. Penick, II and Linda S. Penick filed this chapter 12 case on February 15, 2017.  Debtors are 65 and 60 years old, respectively, and reside on their 107-acre property located in a rural area of Dry Ridge, Grant County, Kentucky which they have owned

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

for many years. Seventy-five percent of the acreage is wooded. The only improvement on the property is a large barn which has an upstairs apartment where Debtors live. The barn also houses their equipment and their calf-raising operation. The Bank is the holder of two claims secured by the Grant County real property.

Debtors' claimed farm operations have two components: calves and timber. As to eligibility, the Bank contends only that Debtors' timber operations do not constitute a "farming operation" under § 101(21).

A chapter 12 debtor bears the burden of proving eligibility. *In re Snider*, 99 B.R. 374, 377 (Bankr. S.D. Ohio 1989) ("The burden of proof in establishing eligibility for bankruptcy relief is on the party filing the petition. *In re Rott*, 73 B.R. 366, 371 (Bankr. D.N.D. 1987). Thus, Debtors have the burden of establishing their eligibility to seek relief under Chapter 12."). Only a "family farmer" with regular annual income may be a chapter 12 debtor. 11 U.S.C. § 109(f). To be deemed a family farmer, a debtor must receive more than 50% of his or her gross income for certain taxable periods preceding their chapter 12 filing from a "farming operation." 11 U.S.C. § 101(18)(A). "The term 'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry or livestock, and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. § 101(21). The only issue here is whether Debtors' timber operations constitute a "farming operation." If so, Debtors are eligible for chapter 12 relief as the combination of their calves and timber operations exceeds 50% of their gross income as required by § 101(18)(A).

The definition of a "farming operation" is not exclusive, § 102(3), (5), and is to be liberally construed. *In re Maike*, 77 B.R. 832, 835 (Bankr. D. Kan. 1987). Nontraditional

2

enterprises may be considered farming operations. *Id*. at 839. Many courts consider the totality of circumstances in determining eligibility, including the following:

1. Is the location of the operation considered a traditional farm;
2. The nature of the enterprise at the location;
3. The type of product and its eventual market (not limited to traditional farm products);
4. The physical presence/absence of family members on the farm;
5. Ownership of traditional farm assets;
6. Whether the debtor is involved in the process of growing/developing crops or livestock;
7. Whether the operation is subject to the inherent risks of farming.

*In re Glenn*, 181 B.R. 105, 107 (Bankr. E.D. Okla. 1995) (citing *In re Sugar Pine Ranch*, 100 B.R. 28 (Bankr. D. Or. 1989)); *see also In re Perkins*, No. 13-31277, 2013 WL 5863732, at *3 (Bankr. E.D. Tenn. Oct. 30, 2013) (citing the seven factors as "relevant factors" under the "'totality of the circumstances' test"); *but see In re Easton*, 883 F.2d 630, 634 (8th Cir. 1989) ("'farming' is to be understood in its ordinary usage").[2]

The Bank contends that state law is instructive in determining whether Debtors' timber activities constitute a farming operation, pointing to the Kentucky Uniform Commercial Code's definition of "farm products" that excludes standing timber. But the Uniform Commercial Code is not at issue here, and its provisions have no bearing on the Bankruptcy Code's definition of farming operation. *Sugar Pine*, 100 B.R. at 34. In *Sugar Pine*, applying a totality of circumstances test, the court found that the harvesting of merchantable timber on a sustained yield basis constituted part of that debtor's integrated farming operation. Similarly, in *Glenn*,

---

[2] As other courts have stated, chapter 12 is intended to protect small family farms. *See*, *e.g.*, *In re Burke*, 81 B.R. 971, 976 (Bankr. S.D. Iowa 1987) ("It is the small family farm that Chapter 12 was designed to protect. 132 Cong.Rec.S. 15076 (daily ed. Oct. 3, 1986) (statement of Sen. Grassley)."); *see also In re Victorious*, 545 B.R. 815, 821 (Bankr. D. Vt. 2016) ("Congress underscored its intent to protect the small family farm"). For that reason, the Court will follow the "totality of the circumstances" test to determine chapter 12 eligibility espoused by *Glenn* and *Sugar Pine Ranch* rather than the more restrictive view in *Easton*.

3

the court held that the debtors' timber activities—both selling their own and brokering timber for others—constituted a farming operation, where debtors lived in a rural area on a traditional farm, had a cow and calf operation, used traditional farm equipment, and their activities were exposed to risks inherent in farming, including fire. *Glenn*, 181 B.R. at 107-08.

Here, Debtors raise calves and harvest and sell timber and firewood from their property. Considering the totality of the circumstances presented by this case, Debtors' wood and timber activities constitute a farming operation. The enterprise is ongoing and not merely a cut of all merchantable timber at one time. Mr. Penick testified he selectively cuts dead and smaller trees, marketing them as firewood to campgrounds, restaurants, individuals, and the federal government (for "heat assistance" programs). Debtors also harvest mature trees on their property, selling the timber in log form and harvesting the tops as firewood. Although Debtors do not plant trees or seedlings, they monitor the reseeding progress. Mr. Penick strategically burns brush and selectively identifies which timber to harvest to ensure the wooded area's canopy is cleared so that the area can reseed and replant itself. Mr. Penick has harvested trees all his life, including before he owned his property. He provided credible testimony regarding his knowledge of the timber operation and his expertise in managing the tree harvesting operation, indicating that a tree's species as well as its size helps determine when it should be cut. Debtors' tree enterprise is subject to the normal risks inherent in farming, including weather and fire.

Both Debtors are directly involved in the farming activities on their property, and their barn and real property obviously are essential to their calf and timber operations. The property houses the timber and calf operations, stores the equipment necessary for those enterprises, and serves as Debtors' residence. The size, nature, and location of the real property evidences that it constitutes a traditional farm. Debtors are eligible to be in chapter 12.

## 2. Debtors' Chapter 12 Plan is not feasible.

In addition to establishing their eligibility to file under chapter 12, Debtors also must prove the feasibility of their chapter 12 plan. 11 U.S.C. § 1225(a)(6). One requirement for feasibility is that Debtors must establish they "will be able to make all payments under the plan and to comply with the plan." *Id.*

Proving feasibility requires more than high hopes for potential success. "[T]o sufficiently establish such reasonable assurance, 'a plan must provide a realistic and workable framework for reorganization.'" *In re Brice Rd. Devs., L.L.C.*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008) (citation omitted). "[T]he chapter 12 feasibility standard requires a court to scrutinize a debtor's proposed plan payments in light of projected income and expenses in order to determine whether it is likely the debtor will be able to make the payments required by the plan." *In re Pertuset*, No. 12-8014, 2012 Bankr. LEXIS 5792, at *35 (B.A.P. 6th Cir. Dec. 18, 2012) (citation omitted).

> "[B]ecause the purpose of Chapter 12 is to promote the reorganization attempts of family farmers, courts generally give debtors the benefit of the doubt on the issue of feasibility, provided a reasonable probability of success is established." [*In re*] *Lockard*, 234 B.R. [484,] 492 [(Bankr. W.D. Mo. 1999)]. They are not required to guarantee "the ultimate success" of their plan "but only to provide a reasonable assurance that the plan can be effectuated, and that reasonable assurance must rise above 'bare agronomic feasibility.'" *In re Wilson*, 378 B.R. 862, 891 (Bankr. D. Mont. 2007) (quoting *Miller v. Nauman (In re Nauman)*, 213 B.R. 355, 358 (B.A.P. 9th Cir. 1997)). "Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *Lockard*, 234 B.R. at 492 (quoting *Clarkson v. Cooke Sales and Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985)); *see also* [*In re*] *Michels*, 301 B.R. [9,] 17 [(Bankr. N.D. Iowa 2003)] ("A plan projecting a marked increased *[sic]* in profitability with no explanation of the cause is not confirmable."); [*In re*] *Howard*, 212 B.R. [864,] 879 [Bankr. E.D. Tenn. 1997)] (holding that feasibility "must be based on objective facts rather than wishful thinking.").

5

*In re Perkins*, Case No. 13-31277, 2013 Bankr. LEXIS 4539, at *33-34 (Bankr. E.D. Tenn. Oct. 30, 2013).

    Debtors did not provide sufficient evidence of a realistic and workable framework for reorganization. To be sure, Mr. Penick's testimony at the evidentiary hearing reflected his significant experience in his farming enterprise, and he offered clear explanations about the work Debtors perform that demonstrated his knowledge of these areas. Debtors' experience and hard work, however, do not establish feasibility.

    Debtors did not introduce documentary evidence at the hearing, such as a monthly budget, to spell out their projected income and expenses to show that their plan is feasible. In contrast, Debtors' tax returns reflect a downward trend for their farming income over last three years. Further, Debtors' four months of pre-hearing operating reports [ECF Nos. 20, 33, 58, 76] reflect that Debtors would not be able to pay their routine expenses plus their anticipated payments to the chapter 12 Trustee—and those reports admittedly did not reflect all of their expenses (such as restitution payments owed by Mrs. Penick). In fact, Mr. Penick admitted at the hearing that none of those operating reports show that, when all revenues and regular expenses are accounted for, Debtors could pay the Bank and their other creditors as projected in their plan.

    Debtors also did not provide evidence at the hearing to establish why their income would increase in the future beyond Mr. Penick's testimony, which was unsupported by any documents or other evidence. For example, Mr. Penick testified about generating additional revenue by raising calves, selling firewood and timber, and performing non-farm labor for a home-building business. However, Debtors offered no written commitments under which they would perform work to produce income post-confirmation.

With regard to their operations, Debtors listed no calves or partnership interests on their schedules as assets [ECF No. 1], despite testimony from Mr. Penick about calves they owned through partnerships. Since they filed their chapter 12 petition, Debtors have opted not to take on additional calves, which would have contributed additional monthly income to their budget. In fact, at the hearing, Debtors did not identify the price per head of calf raised by contract or the average profit per calf from owned or partnership calves, so the Court cannot discern how much each additional calf would generate as income for Debtors. While Mr. Penick testified regarding Debtors' work ethic and the length of their work days based on their current number of calves, timber-harvesting activities, and non-farming work, his testimony did not sufficiently explain how Debtors could increase their calf stock and still perform the additional labor (cutting more firewood and timber, and doing drywall clean-up) discussed at the hearing.

In sum, Debtors failed to carry their burden to prove the feasibility of their plan. As a result, the Bank is entitled to relief from the automatic stay under § 362(d)(2)(B). The real property at issue is not necessary for an effective reorganization as Debtors did not demonstrate that they can effectively reorganize their chapter 12 bankruptcy estate.

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

1. Confirmation of Debtors' proposed chapter 12 plan is DENIED.

2. The Bank's motion for relief from the automatic stay is GRANTED.

3. Debtors shall have fourteen days from the date of entry of this Order to convert their case to another chapter or it will be dismissed without further order or hearing.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Monday, August 28, 2017
(tnw)